24-3168 (L)
*Siren Retail Corp. v. NLRB*

In the
United States Court of Appeals
For the Second Circuit

AUGUST TERM, 2025

ARGUED: NOVEMBER 12, 2025
DECIDED: SEPTEMBER 2, 2026

No. 24-3168 (Lead), 24-3298 (XAP)

SIREN RETAIL CORPORATION, D/B/A STARBUCKS RESERVE ROASTERY,
*Petitioner-Cross-Respondent*,

*v.*

NATIONAL LABOR RELATIONS BOARD,
*Respondent-Cross-Petitioner*,

WORKERS UNITED,
*Intervenor*.

Petition for Review and Cross-Petition for Enforcement of a Decision of the National Labor Relations Board, Agency No. 02-CA-305984.

Before: WALKER, CARNEY, AND NARDINI, *Circuit Judges*.

In 2022, a group of employees at the Starbucks Reserve Roastery in New York City wore shirts bearing the name and logo of the Starbucks Workers United union during a national campaign to negotiate their first union contract. After Starbucks asked the employees to change into dress-code compliant shirts, Workers

United filed an unfair labor practice charge against the company, alleging violations of Sections 7 and 8(a)(1) of the National Labor Relations Act ("NLRA"). 29 U.S.C. §§ 157, 158(a)(1). The National Labor Relations Board then initiated administrative proceedings, based on the allegations in Workers United's complaint, against Starbucks for maintaining and enforcing certain dress code provisions. Those provisions prohibited employees from wearing, while at work, (1) more than one union button ("One-Pin Policy"), (2) buttons or pins that advocate for political, religious, or personal issues ("Issue-Pin Policy"), and (3) shirts with writings that were not pre-approved by Starbucks ("Logo-Shirt Policy").

As to the One-Pin Policy, the Administrative Law Judge ("ALJ") sided with Starbucks, applying this court's decision in *NLRB v. Starbucks Corp.* (*Starbucks I*), 679 F.3d 70 (2d Cir. 2012). In *Starbucks I*, our court held that a prior iteration of Starbucks' One-Pin Policy, in another retail setting, did not violate the NLRA. The Board, however, reversed the ALJ's finding and concluded that the factual circumstances here were distinguishable from the circumstances in *Starbucks I*.

The Board then applied its own decision in *Tesla, Inc.*, 371 NLRB No. 131 (Aug. 29, 2022), to assess Starbucks' other restrictions on employee dress. The *Tesla* test creates a rebuttable presumption that all mandated uniform codes violate the NLRA, and obligates employers to narrowly tailor their uniform policies to avoid liability. Applying the *Tesla* test, the Board concluded that Starbucks' dress code provisions were not narrowly tailored to serve the company's proffered special circumstances and therefore violated the NLRA.

In this petition for review, Starbucks challenges the Board's unfair labor practices findings, and the Board cross-applies for

enforcement of the Board's ruling. The parties dispute whether the Board's One-Pin Policy finding is foreclosed by *Starbucks I* and whether the Board's *Tesla* standard is consistent with *Republic Aviation Corp. v. NLRB*, 324 U.S. 793 (1945). For the reasons stated below, we GRANT Starbucks' petition for review and DENY enforcement as to the Board's invalidation of its dress code policies. We hold that the Board's *Tesla* test, as applied by the Board, fails to properly balance employer and employee interests. We REMAND this case to the agency for it to analyze Starbucks' Issue-Pin and Logo-Shirt rules under a more balanced test.

———

AMY MASON SAHARIA, Williams & Connolly LLP, Washington, D.C. (Lisa S. Blatt, Tyler J. Becker, and Patrick Dever, Williams & Connolly LLP, Washington, D.C.; Jeffrey S. Hiller, Littler Mendelson, P.C., Columbus, OH, *on the brief*), *for* Petitioner/Cross-Respondent.

JARED D. CANTOR (Milakshmi V. Rajapakse, William B. Cowen, Stephanie Cahn, Peter Sung Ohr, Ruth E. Burdick, and Meredith Jason, *on the brief*), National Labor Relations Board, Washington, D.C., *for* Respondent/Cross-Petitioner.

CHRISTINA E. GALLO, Cohen, Weiss and Simon LLP, New York, NY (Carley Russell, Cohen, Weiss and Simon LLP, New York, NY; Michael P. Ellement, James & Hoffman, P.C., Washington, D.C., *on the brief*), *for* Intervenor.

JOHN M. WALKER, JR., *Circuit Judge*:

In 2022, a group of employees at the Starbucks Reserve Roastery (the "Roastery") in New York City wore shirts bearing the name and logo of the Starbucks Workers United union during a national campaign to negotiate their first union contract. After Starbucks asked the employees to change into dress-code compliant shirts, Workers United filed an unfair labor practice charge against the company, alleging violations of Sections 7 and 8(a)(1) of the National Labor Relations Act ("NLRA"). 29 U.S.C. §§ 157, 158(a)(1). The National Labor Relations Board ("NLRB" or "the Board") then initiated administrative proceedings, based on the allegations in Workers United's complaint, against Starbucks for maintaining and enforcing certain dress code provisions. Those provisions prohibited employees from wearing, while at work, (1) more than one union button ("One-Pin Policy"), (2) buttons or pins that advocate for political, religious, or personal issues ("Issue-Pin Policy"), and (3) shirts with writings that were not pre-approved by Starbucks ("Logo-Shirt Policy").

As to the One-Pin Policy, the Administrative Law Judge ("ALJ") sided with Starbucks, applying this court's decision in *NLRB v. Starbucks Corp.* (*Starbucks I*), 679 F.3d 70 (2d Cir. 2012). In *Starbucks I*, our court held that a prior iteration of Starbucks' One-Pin Policy, in another retail setting, did not violate the NLRA. The Board, however, reversed the ALJ's finding and concluded that the factual circumstances here were distinguishable from the circumstances in *Starbucks I*.

The Board then applied its own decision in *Tesla, Inc.*, 371 NLRB No. 131 (Aug. 29, 2022), to assess Starbucks' other restrictions on

employee dress. The *Tesla* test creates a rebuttable presumption that all mandated uniform codes violate the NLRA, and obligates employers to narrowly tailor their uniform policies to avoid liability. Applying the *Tesla* test, the Board concluded that Starbucks' dress code provisions were not narrowly tailored to serve the company's proffered special circumstances and therefore violated the NLRA.

In this petition for review, Starbucks challenges the Board's unfair labor practices findings, and the Board cross-applies for enforcement of the Board's ruling. The parties dispute whether the Board's One-Pin Policy finding is foreclosed by *Starbucks I* and whether the Board's *Tesla* standard is consistent with *Republic Aviation Corp. v. NLRB*, 324 U.S. 793 (1945).

## BACKGROUND

On September 19, 2022, during a national campaign to negotiate the first union contract for Starbucks employees, five to seven employees at the Roastery's main coffee bar in New York City wore black t-shirts bearing the name and logo of the Starbucks Workers United union atop their Starbucks-approved aprons.[1] This event prompted the store's Operations Manager to inform the participating employees that their attire violated the Roastery's dress code policy and to ask them to change into dress-code compliant shirts. The employees changed attire and continued their shifts

[1] The Siren Retail Corporation (here, "Starbucks") offers Starbucks Reserve Roastery storefronts in select cities. Starbucks describes its Roasteries as having a "hipster chic" and "steampunk" aesthetic and offering a larger selection of food and beverage, among other unique offerings, compared to Starbucks' neighborhood stores. Across all stores, Starbucks refers to its employees as "partners." For ease of readability, we use the term "employees" throughout this opinion.

without further incident.

In response to these events, on October 25, 2022, Workers United filed an unfair labor practice charge against Starbucks with the Board. Workers United alleged that Starbucks violated Section 8(a)(1) of the NLRA by "interfer[ing] with employees' [Section 7] right to display union insignia." Joint App'x at 381.

Following an investigation, on June 22, 2023, the NLRB initiated administrative proceedings against Starbucks. The NLRB's complaint alleged that Starbucks committed unfair labor practices by maintaining three dress code policies:

- The One-Pin Policy that provides that, in addition to Starbucks-approved or issued pins, Starbucks employees are permitted to wear on their apron "*one reasonably sized and placed button or pin that identifies a particular labor organization or a partner's support for that organization*, except if it interferes with safety or threatens to harm customer relations or otherwise unreasonably interferes with Starbucks['] public image." *Id.* at 529 (emphasis added).

- The Issue-Pin Policy, that includes, in relevant part, that employees "are not permitted to wear buttons or pins that *advocate a political, religious or personal issue*." *Id.* (emphasis added); *see also* Special App'x at 11.

- The Logo-Shirt Policy that provides that, while employee shirts may have a "small manufacturer's logo," they may not have "*other colors, designs, logos or writings*" other than those pre-approved by Starbucks. Joint App'x at 527 (emphasis added); *see also* Special App'x at 9.

The complaint further alleged that Starbucks violated the NLRA when enforcing these policies by instructing employees to remove their union t-shirts and threatening to discipline those who did not comply.

On December 6, 2023, an ALJ (Michael P. Silverstein) issued a decision concluding that, except with respect to its maintaining of the One-Pin Policy, Starbucks committed the unfair labor practices alleged. As to the One-Pin Policy, the ALJ recommended dismissing that allegation after determining that the policy was "nearly identical" to the one-pin rule that this court already determined not to be an unfair labor practice in *Starbucks I*. Special App'x at 14; *see also id.* at 13. As to all other NLRB charges, the ALJ relied on the Board's decision in *Tesla, Inc*. to conclude that Starbucks' other dress code restrictions were not narrowly tailored to serve their proffered special circumstances.

The parties submitted exceptions to the ALJ's findings.

On November 27, 2024, the NLRB issued a Decision and Order that affirmed the ALJ's recommendations but reversed the ALJ's dismissal of the One-Pin Policy allegation. As to the One-Pin Policy, the Board concluded that charge was not foreclosed by this court's precedent because "the facts in this case differ significantly from those in the 2012 decision that the [ALJ] found preclusive." Special App'x at 3. Applying the *Tesla* test once again, the Board concluded that Starbucks violated the NLRA's prohibition of unfair labor practices as to all five charges.

In early December 2024, Starbucks filed a petition in this court to review the NLRB's decision. 29 U.S.C. § 160(f). The Board cross-applied for enforcement of that decision. 29 U.S.C. § 160(e). For the reasons stated below, we GRANT Starbucks' petition for review and

DENY enforcement as to the Board's invalidation of its dress code policies. We hold that the Board's *Tesla* test, as applied, fails to properly balance employer and employee interests. We REMAND this case to the agency for it to analyze Starbucks' Issue-Pin and Logo-Shirt rules under a more balanced test.

## DISCUSSION

### I. Standard of Review

This court reviews NLRB opinions and the portions of the ALJ opinion that the NLRB affirmed. *See NLRB v. Special Touch Home Care Servs., Inc.*, 566 F.3d 292, 297 (2d Cir. 2009).

The parties dispute, without in-depth analysis, the applicable standard of review and the level of deference, if any, owed to NLRB rulings in the wake of the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), which overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, reviewing courts were required to defer to an administrative agency's reasonable legal interpretation of ambiguous statutes. *See Loper Bright*, 603 U.S. at 379–80. Under *Loper Bright*, courts are instead instructed to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority[.]" *Id.* at 412.

To support its argument that this court reviews NLRB legal conclusions *de novo*, Starbucks cites *Loper Bright*. The Board and Workers United take issue with Starbucks' view on the implication of *Loper Bright*, and instead argue that while *Loper Bright* "overruled the deference framework" previously in place under *Chevron*, *Loper Bright* left "substantial-evidence review intact." Br. for Respondent-Cross-Petitioner at 13 n.6; *see* Br. for Intervenor at 6 n.1; *see also Loper Bright*,

603 U.S. at 392, 407–12. Accordingly, the NLRB and Union urge review today under the substantial evidence standard.

To mitigate the apparent confusion stemming from the parties' differing views on the appropriate standard of review, we think it helpful to address this matter before turning to the merits of this case.

Even though the parties here do not dispute the NLRB's factual findings, we reaffirm that *Loper Bright* did not disturb the nature of our review of the NLRB's factual findings. *See Loper Bright*, 603 U.S. at 387, 392. We grant deference to the NLRB's factual findings so long as they are supported by "substantial evidence." 29 U.S.C. §§ 160(e), (f); *see NLRB v. Caval Tool Div., Chromalloy Gas Turbine Corp.*, 262 F.3d 184, 188 (2d Cir. 2001). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Caval Tool Div.*, 262 F.3d at 188 (internal quotation marks omitted). The substantial evidence standard does not permit us to "displace the NLRB's choice between two fairly conflicting views, even though we would justifiably have made a different choice had the matter been before us de novo." *NLRB v. Long Island Ass'n for AIDS Care*, 870 F.3d 82, 87 (2d Cir. 2017) (per curiam) (internal quotation marks omitted and alterations adopted).

The questions before us today, instead, turn on which standard of review applies and the extent to which deference is owed to two of the Board's purely legal conclusions: (1) its interpretation of *Starbucks*

*I* and (2) its interpretation of *Republic Aviation Corp. v. NLRB*, 324 U.S. 793.[2]

We review the Board's legal conclusions in both scenarios de novo. In considering what the law should be in a particular case, it is for us to decide the law. In making our legal determination, we may no longer defer to the opinions of the NLRB but still may consider whether they are persuasive. Thus, while the NLRB's legal conclusions may no longer have the "'power to control,'" as they did under *Chevron*, they may still have the "'power to persuade.'" *Loper Bright*, 603 U.S. at 402 (quoting *Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944)). Under *Skidmore*, an agency's legal conclusion may have persuasive force depending on the "'thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements[.]'" *Id*. at 388 (quoting *Skidmore*, 323 U.S. at 140). Such persuasive force is not present, however, in instances where the Board misinterprets and misapplies the law. *NLRB v. Newark Elec. Corp*., 14 F.4th 152, 160 (2d Cir. 2021); *see also MikLin Enters. Inc. v. NLRB*, 861 F.3d 812, 826 (8th Cir. 2017) (enforcing a Board order only "as long as the Board correctly applied the law"). We have unfettered authority under *Loper Bright* to analyze such questions de novo. In such cases, we must "exercise [our] independent judgment in deciding whether an agency has acted

---

[2] With respect to the application of law to fact generally, we note that *Loper Bright*'s discussion of *NLRB v. Hearst Publications*, 322 U.S. 111 (1944), suggests that some deference may still be owed to the NLRB's reasonable application of the correct law to a particular set of facts. *See Loper Brigh*t, 603 U.S. at 388–89. We do not analyze this point further, however, because that issue was not briefed by the parties and does not bear on our assessment today.

within its statutory authority." *Loper Bright*, 603 U.S. at 412; *see United Nat. Foods, Inc. v. NLRB*, 138 F.4th 937, 946 (5th Cir. 2025).

*Loper Bright* also cautions, still, that a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." 603 U.S. at 394. For example, a statute might "expressly delegate to an agency the authority to give meaning to a particular statutory term"; "empower an agency to prescribe rules to fill up the details of a statutory scheme"; or "regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id.* at 395 (internal citations and quotation marks omitted and alterations adopted). Indeed, the Supreme Court has suggested that in certain elements, the NLRA may be such a statute. *See Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500–01 (1978) (recognizing the Board's "authority to formulate rules to fill the interstices of the [NLRA's] broad statutory provisions"). Even so, courts are required to "fix[] the boundaries of [this] delegated authority." *Loper Bright*, 603 U.S. at 395 (internal quotation marks omitted). At all times, as *Loper Bright* teaches, the primary interpretive responsibility rests with the court, not the agency.

## II. The Board's Legal Conclusions

With these standards in mind, we begin by examining the Board's conclusion that Starbucks committed an unfair labor practice by virtue of its One-Pin Policy. Then, we turn to the other two disputed aspects of Starbucks' dress code—its Issue-Pin and Logo-Shirt Policies—and analyze the Board's application of its *Tesla* test to

conclude that all these policies amounted to unfair labor practices in violation of the NLRA.

**A. The One-Pin Policy**

The Board's conclusion that maintaining the Roastery's One-Pin Policy was an unfair labor practice is foreclosed by our precedent. *See Starbucks I*, 679 F.3d at 78. In *Starbucks I*, we rejected the Board's conclusion that a close analogue to the One-Pin Policy violated the NLRA. The policy at issue in that case applied to employees working in the thousands of Starbucks neighborhood stores and, like the One-Pin Policy here, limited employees to wearing only one reasonably sized union button or pin. *Id.* at 73.

This case, in substance, is indistinguishable. Under the applicable policies in both cases, employees could wear only one pro-union pin; were subject to a comprehensive dress code; and were encouraged to wear multiple pins and buttons issued by Starbucks as part of its employee-reward and product-promotion programs. *See id.* at 72. Under these circumstances, we concluded in *Starbucks I* that Starbucks is "entitled to avoid the distraction from its messages that a number of union buttons would risk" and that Starbucks "adequately maintain[ed] the opportunity to display pro-union sentiment by permitting one, but only one, union button on workplace clothing." *Id.* at 78. That reasoning compels the same conclusion with respect to the relevantly similar One-Pin Policy at issue here.

As the Board correctly notes, there are factual differences between other aspects of the dress code policy that applied to neighborhood store employees at the time of *Starbucks I* and the policy applicable to Roastery employees in this case. In *Starbucks I*, neighborhood store employees were required to wear "plain black or

white" tops to maintain a "clean, neat, and professional appearance" whereas here, Roastery employees are encouraged to wear a range of colors and accessories to cultivate a "steampunk, hipster vibe." Special App'x at 3 (internal quotation marks omitted). But the Board cannot identify anything in the reasoning of *Starbucks I* indicating that those differences are legally relevant. To the contrary, the dispositive consideration in *Starbucks I*—the distracting effect that "messages contained on employee buttons" may have on the "particular public image" that Starbucks is trying to create—applies with at least as much force in this case as it did in that one. 679 F.3d at 78.

We therefore deny enforcement of the NLRB's finding that the One-Pin Policy was an unfair labor practice.

**B. The Issue-Pin Policy and Logo-Shirt Policy**

We turn next to the Board's invalidation of Starbucks' Issue-Pin and Logo-Shirt Policies. For the reasons described below, we deny enforcement of the Board's order. Because we hold that *Tesla* amounts to a misapplication of precedent, we remand this case to the agency for further consideration under a more balanced test.

**1. Starbucks' Exception to the Issue-Pin Policy**

As a threshold matter, the Board contends that Starbucks forfeited its challenge to the ALJ's unfair labor practices finding with respect to the Issue-Pin Policy because Starbucks failed to specifically state the "grounds on which this purportedly erroneous finding should be reversed" in its exceptions or its supporting brief, as required by Section 10(e) of the NLRA. Respondent-Cross-Petitioner Brief at 52; *see also id.* at 52–56. We disagree. While the Board is correct that Starbucks could have been more explicit on its grounds for reversal in its exceptions or supportive brief, as is required by Section

10(e) of the NLRA, Starbucks did not fail to provide adequate notice to the Board of its raising the issue.

Section 10(e) of the NLRA bars courts of appeals from considering any "objection that has not been urged before the Board . . . unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). When addressing forfeiture under Section 10(e) of the NLRA, the Board asks whether the petitioner "specifically urged" an exception by, among other things, "[p]rovid[ing] precise citations of the portions of the record relied on" and "[c]oncisely stat[ing] the grounds for the exception[.]" 29 C.F.R. § 102.46(a)(1); *see also id.* § 102.46(a) (requiring that a supporting brief set forth "any argument and citation of authorities").

The NLRB cites several cases in support of its argument that Starbucks' efforts were insufficient, but each of these cases involved instances where a party entirely failed to file the relevant exceptions. *See NLRB v. Consol. Bus Transit, Inc.*, 577 F.3d 467, 474 n.2 (2d Cir. 2009) (per curiam) ("[W]e lack jurisdiction to review objections that were not urged before the Board." (internal quotation marks omitted and alterations adopted)); *KBI Sec. Serv., Inc. v. NLRB*, 91 F.3d 291, 294 (2d Cir. 1996) ("KBI failed to file exceptions with the Board . . . . For that reason, . . . we lack jurisdiction to review that determination."); *NLRB v. GAIU Loc. 13-B, Graphic Arts Int'l Union*, 682 F.2d 304, 310–11 (2d Cir. 1982) ("Nor did the Union, upon the General Counsel's appeal to the Board, file any cross-exceptions to the ALJ's rulings[.]"). That was not the case here.

Starbucks provided adequate notice to the Board. Starbucks adequately preserved its challenge to the Issue-Pin Policy by excepting to the ALJ's conclusion that Starbucks "violated Section

8(a)(1) of the Act by '[m]aintaining a dress code rule prohibiting employees from wearing pins or buttons that advocate a political, religious, or personal issue.'" Joint App'x at 562 ¶ 7 (Exception 7); *see also id.* at 562–63 ¶¶ 11, 18. Starbucks also properly set out its rationale supporting this exception in its supporting brief. Starbucks references Exception 7 at the outset of its brief and proceeds to challenge the ALJ's decision that the Issue-Pin Policy violated Section 8(a)(1) of the NLRA and that Starbucks failed to establish special circumstances with respect to it. *See* Appendix B, Respondent's Brief in Support of its Exceptions to the Decision & Order of the Administrative Law Judge at 1–2; *id.* at 14 ("[T]he ALJ applied the wrong test and failed to properly balance [employee] interests in self-organization with [Starbucks'] equally important interest in maintaining discipline in their establishments."); *id.* at 15–17 (challenging the ALJ's conclusion that Starbucks unreasonably "interfered with [employees'] Section 7 rights" by "maintain[ing] a rule prohibiting [employees] from wearing buttons or pins that advocate for a political, religious, or personal issue."). These efforts provided sufficient notice to the Board to satisfy Section 10(e) of the NLRA. We turn next to the merits of Starbucks' arguments in this petition for review.

**2. The NLRB's Application of its *Tesla* Decision to Starbucks' Dress Code Policies**

Section 8(a)(1) of the NLRA expressly prohibits employers from engaging in "unfair labor practice[s]" by "interfer[ing] with, restrain[ing], or coerc[ing] employees" in the exercise of their Section 7 rights to "self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. §§ 158(a)(1) (defining unfair labor practices), 157

(enumerating employee rights). From the NLRA's earliest days, courts have recognized that Section 7 protects the right of employees to wear items, including pins and buttons, that relate to the terms and conditions of employment, unionization, and other protected matters. *See Republic Aviation*, 324 U.S. at 801–03; *see also Starbucks I*, 679 F.3d at 77.

To assess whether a dress code restriction violates Section 8(a)(1) of the NLRA, the Board has created a "narrow" rule: if an employer can demonstrate "special circumstances sufficient to outweigh [its] employees' Section 7 interests and legitimize the regulation of such insignia[,]" then the employees' Section 7 interests "may give way" to the employer's restriction. *Pac. Bell Tel. Co.*, 362 NLRB No. 105, 2015 WL 3492100, at *4 (June 2, 2015), *pet. for review dismissed*, No. 15-1186, 2016 WL 3040578 (D.C. Cir. May 10, 2016); *E&L Transp. Co.*, 331 NLRB 640, 640 n.3 (2000) ("[T]he 'special circumstances' exception is narrow."). The Board recognizes special circumstances in cases where display of union insignia might "'jeopardize employee safety, damage machinery or products, exacerbate employee dissension'" or, as relevant here, "'unreasonably interfere with a public image that the employer has established, as part of its business plan, through appearance rules for its employees.'" *P.S.K. Supermarkets, Inc.*, 349 NLRB 34, 35 (2007) (quoting *Bell-Atlantic-Pennsylvania*, 339 NLRB 1084, 1086 (2003), *enf'd sub nom., Commc'ns Workers of Am., Loc. 13000 v. NLRB,* 99 F. App'x 233 (D.C. Cir. 2004)).

Over time, the Board has refined its special circumstances analysis and the level of scrutiny it gives to certain employer restrictions. In two reasonably recent Board decisions relevant to this case, these refinements are manifest. On one end of the spectrum is *Wal-Mart Stores, Inc.*, 368 NLRB No. 146 (Dec. 16, 2019), which

interpreted *Republic Aviation* as requiring a reasonable balancing test between employer and employee interests, and on the other end, *Tesla, Inc*., 371 NLRB No. 131 (Aug. 29, 2022), which overruled *Wal-Mart Stores*. These two cases, which are at the heart of the parties' arguments, deserve our further attention.

In *Wal-Mart Stores*, the Board considered whether an employer violated Section 8(a)(1) by maintaining two dress code policies that were content-neutral and limited—but did not outright prohibit—employees from wearing union insignia. 368 NLRB No. 146, at 1. Relying on its decision two years earlier in *Boeing Co*., 365 NLRB No. 154 (Dec. 14, 2017), the Board held that such policies were to be subject to an interest balancing test and evaluated by "'(i) the nature and extent of the potential impact on NLRA rights, and (ii) [whether the] legitimate justifications associated with the policy'" outweighed the "'adverse impact'" on employees' Section 7 rights. *Wal-Mart*, at 3 (emphasis omitted and alterations adopted) (quoting *Boeing Co.*, 365 NLRB No. 154, at 3, 16). Ultimately, the Board upheld Wal-Mart's policies, explaining that "[l]imitations on the display of union insignia short of outright prohibitions will vary in the extent to which they serve legitimate employer interests and the degree to which they interfere with Section 7 rights." *Id*.

*Tesla* departed from this framework and enforced a stricter standard for determining the "lawfulness of workplace rules or policies" that, even implicitly, "restrict the display of union insignia by requiring employees to wear uniforms or other designated clothing." *Tesla, Inc*., 371 NLRB No. 131, at 1. Under *Tesla*, the Board began its analysis by accepting the premise that all employer-enforced uniform requirements that limit employees' right to display union insignia, including partial restrictions, are presumptively unlawful. Accordingly, the Board then placed the burden on all

employers to "narrowly tailor[]" their articulated special circumstances to avoid liability, regardless of whether the employer imposed a complete or partial ban on union insignia. *Id.* at 7; *id.* at 1 (holding that "when an employer interferes *in any way* with its employees' right to display union insignia," the employer "ha[s] the burden to show that its interference [is] justified by special circumstances").

In this petition for review, Starbucks challenges the *Tesla* decision's baseline presumption against employer dress code rules and, relatedly, its narrow tailoring requirement. The Board, on the other hand, adheres to *Tesla*'s reasoning. The Board argues that its application of *Tesla* is derived from and supported by the Supreme Court's 1945 decision in *Republic Aviation Corp. v. NLRB*, 324 U.S. 793.

The reconciliation of these contrary positions falls exclusively within the court's purview. While the Board's ultimate decision as to whether an employer committed unfair labor practices involves the application of law to fact, our analysis of the validity of the Board's *Tesla* test requires us only to review *Tesla*'s reasoning for consistency with the Act. This question of law is for us to determine. *See Beth Isr. Hosp.*, 437 U.S. at 501; 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law" and "interpret constitutional and statutory provisions"). Only after we decide that the Board's rule is consistent with the law, can we determine whether "the Board's application of the rule, if supported by substantial evidence on the record as a whole, [will] be enforced." *Beth Isr. Hosp.*, 437 U.S. at 501.

We conclude that, because the Board's ruling in *Tesla* rests on erroneous legal foundations, the Board erred in applying *Tesla* to the facts of this case. We do not grant deference to the NLRB's interpretation of Supreme Court precedent. Again, we may act

without deference on this issue because the interpretation of Supreme Court precedent is a question of law that "falls under the special, if not unique, competence of courts." *Loc. Union 36, IBEW, AFL-CIO v. NLRB*, 706 F.3d 73, 82 (2d Cir. 2013); *see generally Tesla, Inc. v. NLRB*, 86 F.4th 640, 647 (5th Cir. 2023) (declining to "give deference to the NLRB's interpretation of Supreme Court rulings[]").

The Supreme Court's decision in *Republic Aviation* does not support the rule adopted in *Tesla* that all employer-mandated dress codes that limit employees' right to display union insignia are presumptively unlawful. To be sure, *Republic Aviation* affirmed the Section 7 right of employees to wear union buttons and insignia. But the Supreme Court also recognized that the right is not absolute. *See Republic Aviation,* 324 U.S. at 801–03. Section 7 protections "do[] not prevent an employer from making and enforcing reasonable rules covering the conduct of employees on company time" because "[w]orking time is for work." *Id*. at 803 n.10 (internal quotation marks omitted). Rather, an employer violates Section 8(a)(1) "only when the interference with [Section] 7 rights outweighs the business justification [i.e., the special circumstances] for the employer's action[.]" *Textile Workers Union of Am. v. Darlington Mfg. Co.*, 380 U.S. 263, 269 (1965) (citing *Republic Aviation*, 324 U.S. 793); *see also Midstate Tel. Corp. v. NLRB*, 706 F.2d 401, 403 (2d Cir. 1983) (stating that *Republic Aviation* "made clear" that an "employee['s] right to display union-related messages . . . must be balanced against 'the equally undisputed right of employers to maintain discipline in their establishments'" (quoting *Republic Aviation*, 324 U.S. at 798)). Accordingly, when assessing whether an employer violates Section 8(a)(1), we must be mindful both of the employer's justification for imposing such a restriction together and of an employee's Section 7 rights.

Contrary to the Board's position, *Republic Aviation* and judicial decisions applying it do not support applying a strict presumption against employers without fairly balancing employer and employee interests. *See Midstate Tel. Corp.*, 706 F.2d at 403 ("As a general rule, the balance must tip against rules restricting employees' right to wear union-related insignia or attire, unless the employer demonstrates 'special circumstances[.]'"). Otherwise submitting all employers—regardless of their degree of intervention—to a strict presumption of unlawfulness limits the agency's ability to assess whether an employee's ability to express union support is "truly diminished" by an employer's dress code rule. *NLRB v. United Steelworkers of Am.*, 357 U.S. 357, 363 (1958).[3]

To the extent *Republic Aviation* supports a strict presumption against dress code restrictions, it involved such a presumption only when there is "evidence that [the employer's restriction] was adopted for a discriminatory purpose." *Republic Aviation*, 324 U.S. at 803 n.10; *see also Guard Publ. Co. v. NLRB*, 571 F.3d 53, 61 (D.C. Cir. 2009) ("When it bans the wearing of union insignia, the employer bears the burden of overcoming the presumption of an unfair labor practice by demonstrating that special circumstances exist."). Even in such cases

---

[3] To be clear, the problem with the *Tesla* test is not that it employs a presumption *per se*. Indeed, in *Starbucks I*, we described our "special circumstances" framework as setting forth a "presumption" that can be overcome by the employer. *Starbucks I*, 679 F.3d at 77; *accord Guard Publ'g Co. v. NLRB*, 571 F.3d 53, 61 (D.C. Cir. 2009). The problem, rather, is the strictness of the presumption that *Tesla* sets forth, including the lack of weight given to the degree of interference with employees' Section 7 rights that a uniform policy imposes. *Republic Aviation* requires the Board to engage in a balancing exercise. A presumption so rigid that it might not be overcome even when the balance tips decidedly in favor of the employer's interests is of a different character than the framework endorsed in *Republic Aviation*.

where an employer imposes an "unreasonable impediment to self-organization," *Republic Aviation* still requires balancing the employer's articulated special circumstances against the employee's Section 7 rights. *Republic Aviation*, 324 U.S. at 803 n.10 (internal quotation marks omitted) (requiring an employer to demonstrate special circumstances that its justification is necessary); *see also NLRB v. Floridian Hotel of Tampa, Inc.*, 318 F.2d 545, 547 (5th Cir. 1963) ("Absent a discriminatory purpose . . . [an employer] may promulgate and enforce rules to [e]nsure an efficient and orderly operation, including the reasonable regulation of the dress of its employees[.]"); *see also Beth Isr. Hosp.*, 437 U.S. at 510 (Powell, J., concurring) (quoting *Republic Aviation* for the rule that companies may prohibit union solicitation during working time "in the absence of evidence that it was adopted for a discriminatory purpose[.]").

For similar reasons, we also cannot endorse *Tesla*'s narrow tailoring requirement. This requirement places a strict-scrutiny-like burden on all employers to justify even facially neutral, partial dress code restrictions. *See Tesla, Inc.*, at 27 n.46 (describing the narrow tailoring requirement as "virtually identical to 'strict scrutiny,' the most exacting standard of review applied by the courts." (Members Kaplan & Ring, dissenting)).

As stated above, *Republic Aviation* and subsequent cases applying that decision emphasize the need to strike a balance between "the undisputed right of self-organization assured to employees . . . and the equally undisputed right of employers to maintain discipline in their establishments" and to promote their legitimate business interests, when assessing possible Section 7 violations. *Republic Aviation*, 324 U.S. at 797–98. The Supreme Court has directed the Board to find a balance that does "as little destruction of one as is consistent with the maintenance of the other." *NLRB v.*

*Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956); *see generally Eastex, Inc. v. NLRB*, 437 U.S. 556 (1978). The Supreme Court's repeated emphasis in *Republic Aviation* on striking a balance conflicts with the Board's application of *Tesla*'s narrow tailoring requirement. Placing a strict-scrutiny-like burden on employers *in addition to* a balancing test that otherwise adequately accounts for employee and employer interests is inconsistent with our special-circumstances framework and the principles established in *Republic Aviation*.

The Board's *Tesla* standard does little more than pay lip service to balancing. As the Fifth Circuit cautioned in its decision vacating the Board's application of *Tesla*: "[i]f the Board subjects every infringement to a special-circumstances test, it cannot adjust the level of scrutiny when it considers comparatively lesser or greater infringements." *Tesla, Inc.*, 86 F.4th at 652. This risk is exemplified by the Board's application of *Tesla*'s "narrow tailoring" requirement, which subjects all employers to a strict-scrutiny-like standard even when employers enforce partial restrictions on employee dress. Absent statutory authority from Congress to craft such a rule, the Board exceeded its authority in placing such a strict burden upon employers both in *Tesla* and in this case. The Board here should have been more mindful of the balancing requirement in *Republic Aviation* and the interests of the employer.

The First Circuit's decision in *Boch Imports Inc. v. NLRB*, 826 F.3d 558 (1st Cir. 2016), the Fifth Circuit's decision in *In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707 (5th Cir. 2018), and other courts' applications of the Board's narrow tailoring requirement do not suggest otherwise. As Starbucks highlights, the employers in those cases did not contest the Board's application of a narrow tailoring requirement, as Starbucks has done here. *See* Reply Br. for Petitioner/Cross-Respondent at 19; *Boch Imps.*, 826 F.3d 558 (Nos. 15-

1653, 15-1721), Dkt. Aug. 27, 2015 (arguing that "*Boch Honda* narrowly tailored the Dress Code's prohibition to apply only to those employees who have contact with the public"); Br. for Petitioner/Cross-Respondent at *58, 2017 WL 2832719, *In-N-Out Burger*, 894 F.3d 707 (conceding that "[a] rule prohibiting the wearing of union insignia must be 'narrowly tailored'"). The fact that other courts have applied the NLRB's previously unchallenged narrow tailoring requirement does not oblige us to do the same now.

We, like the Fifth Circuit, reject the test set forth in the NLRB's *Tesla* decision. Accordingly, we also deny enforcement and remand this case to the NLRB for it to apply a more evenly measured balancing test, one that encompasses the balancing framework in *Republic Aviation*, when analyzing whether Starbucks' dress-code policies violated the NLRA. While recognizing that the NLRB has "authority to formulate rules to fill the interstices of the [NLRA's] broad statutory provisions," our decision to reject *Tesla* demands that we provide some guidance as to what law to apply moving forward. *Beth Isr. Hosp*., 437 U.S. at 501. When balancing employer and employee interests on remand, the Board should seriously entertain the following factors, as part of its analysis: (1) the extent of intrusion on employee Section 7 rights (i.e., whether the employer enforced a full or partial ban on union insignia during working time); (2) whether the employer's policy is facially neutral, nondiscriminatory, and consistently enforced; (3) the context or circumstances underlying the intrusion. In considering these factors, the Board's factual findings must be supported by substantial evidence. By doing so, the Board will be better able to assess whether an employer's policy "truly diminished the ability of the labor organizations

involved to carry their message to [] employees." *United Steelworkers of Am.*, 357 U.S. at 363.

Finally, we note that the Board's remedial order in this case was exceptionally broad and may have exceeded the terms of its specific ruling. We ask that the Board, after detailed consideration of this case with the parties' input, limit its order to the precise holding it reaches.

## CONCLUSION

For the reasons stated above, we GRANT Starbucks' petition for review and DENY enforcement of the NLRB's finding that the One-Pin Policy was an unfair labor practice. We DENY enforcement of the remainder of the NLRB's order and REMAND to the agency for it to issue a decision regarding the Issue-Pin and Logo-Shirt policies under a standard consistent with this opinion.